IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| V. | : | CRIMINAL INDICTMENT NO.: |
| | : | 112-CR-00016 |
| PAUL L. BLACK | : | |
| a/k/a Marcus Lively | : | |
| | : | |
| EDNECDIA SUTINA JOHNSON | : | |
| Defendants | : | |

## MOTION TO SUPPRESS

**COMES NOW**, Paul L. Black a/k/a Marcus Lively and Ednecdia Sutina Johnson, Defendants, by and through counsels of record, Tony L. Axam and Ashutosh Joshi, and moves this Court to grant Defendants's motion to suppress all evidence alleged in the above styled case, and in support thereof shows the Court the following:

## STATEMENT OF FACTS

On 21 December 2011, at approximately 12:30 am, intruders broke into Ms. Ednecdia Johnson & Mr. Paul Black's home located at 9154 Betony Wood Trial.  Paul Black and Ednecdia Johnson were the only persons residing at the residence and were the only

occupants of the residence that night.  Black and Johnson were asleep at the time of the intrusion and were awaken by the sound of the front door being burst into and the alarm sounding. Black directed Johnston to exit the residence for her own safety.  Johnson complied and, as she fled the residence, dialed 911 for assistance.  Black encountered an armed intruder and defended himself against him.  A struggled ensured and the intruder suffered a gunshot wound and fled the residence; he was discovered lying on the grass close to the street.  Black's right hand was shot during the invasion causing him to lose two (2) fingers.  The entire incident occurred on the main level of the home in the master bedroom and the front foyer.  Upon officers arrival, Black advised the officers what had occurred and advised the officers that there was no one else inside the residence.  Officers observed the front door had been broken into, bullet holes in the walls of the foyer, and blood in the foyer and bedroom areas.  Officers then began a full blown search the entire three level residence, knocking down locked doors, overthrowing beds and mattresses and trashing the residence in the process.  Offices did not seek, nor did they obtain consent to search from Black or Johnson.  After officers broke into the locked door leading to the basement, they entered the basement and located what they allege to be evidence of financial transaction crimes as well as two (2) hand guns and a

2

small amount of marijuana.  Black and Johnson were subsequently arrested.

## ARGUMENT AND CITATION OF AUTHORITY

**I.    THE OFFICERS VIOLATED BLACK AND JOHNSON'S FOURTH AMENDMENT RIGHT TO BE FREE FROM UNREASONABLE SEARCHES AND SEIZURES WHEN THEY CONDUCTED A FULL BLOWN SEARCH OF THE RESIDENCE.**

The Fourth Amendment to the United States Constitution provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizure, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.  U.S. Const. Amend. IV.

One's home is sacrosanct, and unreasonable government intrusion into the home is "the chief evil against which the wording of the Fourth Amendment is directed." Payton v. New York, 445 U.S. 573, 585, 100 S.Ct. 1371 (1980) *quoting* United States v. United States District Court, 407 U.S. 297, 313, 92 S.Ct. 2125 (1972).  A warrantless search of a person's home is

presumptively unreasonable. <u>United States v. Ramirez-Chilel</u>, 289 F.3d 744, 751 (11th Cir.2002).

"[The Fourth Amendment] protects two types of expectations, one involving 'searches,' the other 'seizures.' A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed. A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property. (Footnotes omitted.) <u>United States v. Jacobsen</u>, 466 U.S. 109, 113, 104 S.Ct. 1652 (1984).

In the instant matter, it is undisputed that officers did not have a warrant to search Black and Johnson's residence and that no consent to search was given by either of the residents of the home. Therefore, the determination of whether the search of his residence was valid turns on whether a valid exception to the exclusionary rule was present at the time that the officers broke into the locked room. Although the officers were legally inside the residence for the purpose of investigating the crimes which were just committed against Black and Johnson, Black and Johnson asserts that the circumstances were not sufficiently exigent to justify the warrantless entry into the locked room on the bottom level of Black and Johnson's home.

U.S. Supreme Court decisions "have emphasized that
exceptions to the warrant requirement are few in number and
carefully delineated, and that the police bear a heavy burden
when attempting to demonstrate an urgent need that might justify
warrantless searches or arrests." Welsh v. Wisconsin, 466 U.S.
740 at 749-750(II), 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984).
Thus, "[b]efore agents of the government may invade the sanctity
of the home, the burden is on the government to demonstrate
exigent circumstances that overcome the presumption of
unreasonableness that attaches to all warrantless home entries."
(Citation omitted.) Id. at 750(II), 104 S.Ct. 2091; see Threatt
v. State, 240 Ga.App. 592, 595-596(1), 524 S.E.2d 276 (1999).
Exigent circumstances only exist when the delay incident to
obtaining a warrant must yield to the urgent need for immediate
action. United States v. Burgos, 720 F.2d 1520, 1526 (11th
Cir.1983).  The exception encompasses several common situations
where resort to a magistrate for a search warrant is not
feasible or advisable, including: danger of flight or escape,
loss or destruction of evidence, risk of harm to the public or
the police, mobility of a vehicle, and hot pursuit. State v.
Charles, 264 Ga.App. 874, 875, 592 S.E.2d 518 (2003); State v.
Mixon, 251 Ga.App. 168, 170, 554 S.E.2d 196 (2001). *See also*,
Johnston v. United States, 333 U.S. 10, 14-15, 68 S.Ct. 367,
369, 92 L.Ed. 436 (1948) (listing situations falling within

exigent circumstances exception); United States v. Reid, 69 F.3d 1109, 1113-14 (11th Cir.1995) (upholding warrantless search of residence based on exigent circumstances arising from risk of losing evidence, risk of flight, and danger of harm to public or officers); United States v. Forker, 928 F.2d 365, 368-69 (11th Cir.1991) (upholding warrantless search of vehicle based on mobility); United States v. Tobin, 923 F.2d 1506, 1510-11 (11th Cir.1991) (en banc) (upholding warrantless search of residence based on danger narcotics would be destroyed or removed); United States v. Burgos, 720 F.2d 1520, 1525-26 (11th Cir.1983) (upholding warrantless search of residence based on threat of injury to neighborhood arising from defendant's stash of weapons); United States v. Blasco, 702 F.2d 1315, 1326 (11th Cir.1983) (upholding warrantless search based on imminent danger of flight or escape); United States v. Kreimes, 649 F.2d 1185, 1192 (5th Cir. Unit B 1981) (upholding warrantless search based on hot pursuit and danger posited by possibility of armed fugitive remaining at large).

Here, neither Black nor Johnson were fleeing felons or suspects.  This case did not involve a vehicle.  Officers were not in hot pursuit of anyone and there was reason to believe that evidence of a crime was in danger of being destroyed or removed.  Thus, officers rely on a need for a protective sweep

of the home for officer safety and to discover victims or the killer.  In the instant matter, however, there is no evidence supporting such a need.

i.   Officers Lacked Reasonable Basis To Conduct Protective Sweep Of The Residence

In Maryland v. Buie, 494 U.S. 325 (1990), the Supreme Court provided a framework of the limits regarding a police safety exception to a search.  There, the Court reasoned that, "a 'protective sweep' is a limited search of the premises conducted primarily to ensure the safety of police officers by detecting the presence of other occupants." Id.  The Court held that officers are authorized to perform a protective sweep in conjunction with an *in-home* arrest when they possess "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." (Emphasis added) Id.

Black and Johnson acknowledges that emergency situations involving endangerment to life fall within the exigent circumstances exception.  However, this emergency exception has

been applied when there is an on-going emergency[1], when the emergency is reported by an anonymous 911 caller, when there is an indication of others in the residence, or when the assailant is still at large[2].  In the case at bar, there was no in-house arrest.  The intruder was located outside of the residence. Black and Johnson were the victims of the intrusion.  Black is listed in the police report as the victim and Johnson is listed as the complainant.  Officers were simply there to investigate a home intrusion where all of the occupants of the residence and the intruder into the residence were identified.  The intruder was wounded, was outside of the residence and did not pose a threat or danger to offers or anyone else.  Black and Johnson advised officers of what had occurred and advised that there was no one else in the residence.  Black and Johnson were at all times and in all ways compliant with officer's instructions and did not behave in any manner which would lead officers to believe that they would pose a threat to the officer's safety.

---

1 U.S. v. Tennis, 309 Fed. Appx. 312 (Ala. 2009) (upholding entry and search of residence where officers, responding to a 911 call about a disturbance, arrived to find a window to the left of the door broken and the sound of yelling and hollering inside, the defendant was agitated, visibly impaired, and refused to comply with officers' commands and officers could not see the person with whom defendant was arguing.); United States v. Holloway, 290 F.3d 1331 (11th Cir.2002), (upholding entry into and warrantless search of defendants home when officers, responding to a 911 call reporting gunshots and fighting inside the house, arrived to find defendant and his wife arguing and observed several beer cans and shotgun shells in the yard, a third person  emerged from behind the residence and the wife was not compliant with officers' commands).

2 U.S. v. Carlisle, 2008WL 141482 (N.D.Fla. 2008) (holding officers justified in warrantless entry into and search of residence where defendant who called 911 to report that he was shot by his uncle advised that no one was inside the residence, but that the assailant had fled the scene and the defendants statement that African killer bees were inside the residence raised suspicion that the defendants statements about the occupants of the residence were not truthful or were inaccurate).

Black and Johnson were present on the scene for officers to request a consent to search the property.  However, no consent was requested.  Officers Harris and Price reported that, upon their arrival, which was prior to the alleged "protective sweep", "other Clayton County Police units…were already on the scene. I observed no people moving around the outside of the house other than CCPD units."  Accordingly, the emergency was over and no exigent circumstance existed upon which to justify an emergency sweep of the residence.

The need to protect or preserve life or avoid serious injury serves as an exception, so the Fourth Amendment does not bar officers from making warrantless entries into and searches of protected areas when they have an ***objectively reasonable basis*** for believing a person within is in need of immediate aid or, at the scene of a homicide, to search the area for the presence of other victims or the killer. Brigham City, Utah, v. Stuart, 547 U.S. 398, 126 S.Ct. 1943, 1947–1948 (2006); Mincey v. Arizona, 437 U.S. 385, 392–393, 98 S.Ct. 2408 (1978)., However, a warrantless search of a site protected against unreasonable searches and seizures is ***not*** constitutionally permissible simply because a homicide recently occurred there, as there is no "murder scene exception" to the warrant requirement. Mincey v. Arizona, 437 U.S. 385, 395, 98 S.Ct. 2408

(1978).   Here, as discussed above, the emergency was concluded upon officers' arrival[3], the 911 caller was present on the scene to explain the crimes that had been perpetrated against them, there was no indication of others in the residence and the assailant had already been located and was subdued due to his injuries.  As such, there was no objectively reasonable basis to believe that others were inside the locked rooms of the residence or that anyone was in immediate need of assistance. Accordingly, Black and Johnson contends that the instant matter is distinguishable from those cases in which the emergency exception has been applied.

ii.  <u>Officers Exceeded The Scope Of Any Permissible Protective Sweep</u>

Notwithstanding, and without waiving the foregoing argument, Black and Johnson avers that law enforcement officers

---

[3] <u>U.S. v. McGough</u>, 412 F.3d 1232 (Ga. 2005) (holding that entry into and search of defendant's apartment was impermissible where the defendant was already under arrest officers, responding to a 911 call, arrived to find defendant's daughter locked inside of the apartment, unable to exit because she did not have a key to the burglar bars, but where the defendant arrived, opened the door to the apartment and was arrested for reckless conduct and daughter was already safely outside; good faith exception to the exclusionary rule did not apply)

exceeded the scope of any permissible protective sweep of the residence when they broke into locked rooms.

Black and Johnson acknowledges legal authority which provides, "... that police who have lawfully entered a residence possess the same right to conduct a protective sweep whether an arrest warrant, a search warrant, or the existence of exigent circumstances prompts their entry."  United States v. Martins, 413 F.3d 139, 150 (1st Cir.2005)  Nevertheless, an exigency only excuses a "limited" intrusion, and once inside the residence, the officers may only seize evidence "found within plain view." United States v. Holloway, 290 F.3d 1331, 1334 (11th Cir.2002). Buie requires officers to have "a reasonable basis for believing that their search will reduce the danger of harm". Buie, *supra*, at 337, 110 S.Ct. 1093 .

Here, the officers' act of breaking into the locked rooms of the residence amounted to a full blown search of the home and exceeded the scope of any permissible protective sweep.  In the police report and affidavit supporting the search warrant, officers allege that they conducted the protective sweep to ensure that there were no additional victims or that the killer was not inside the residence.  However, the exigency which officers describe is belied by the facts.  First, the officers had been on the scene approximately 30 minutes before breaking

into the locked rooms of the house[4].  Second, officers base the
exigency on their lack of information as to whether anyone else
was inside the residence and the locked room.  However, in the
absence of specific and articulable facts showing that another
individual was inside, officers' lack of information cannot
justify a warrantless sweep[5].

        In the case at bar, the law enforcement officers allege
that they observed a "trail of blood" leading to the door on the
bottom level of the residence as well as blood on the handle of
the locked door.  However, at that time, officers had already
encountered the residents of the home who had advised them that
1) they were the only residents inside the house, 2) that the
intruder was shot by Black and retreated out the front door of
the house, 3) the intruder was located by officers lying in the
grass near the street in front of the residence such he was not
at large, 3) that there was no one else inside the residence,
and 4) officers did not hear any noises or observe any movement
which would indicate that anyone else was present inside the
locked room. Black, who was injured while defending against the
invasion, was bleeding and had been walking around the inside

---

[4] <u>U.S. v. Chaves</u>, 169 F.3d 687 (Fla. 1999) (holding that where the sweep did not immediately follow the
arrest of the defendants, but occurred a substantial time after agents arrived on the scene, some forty-
five (45) minutes, the officers obviously saw no immediate need to conduct a protective sweep of the
location).

[5] <u>United States v. Colbert</u>, 76 F.3d 773, 778 (6th Cir. 1996) (holding lack of information cannot provide an
articulable basis upon which to justify a protective sweep).

and outside of the residence which explains any blood that officers observed.  Based on a totality of these circumstances, officers did not have any objectively reasonable basis for believing a person within the locked door was in need of immediate aid or that there were any other victims or intruders present inside of the locked door within the residence.  By breaking into a locked room, the officers escalated the purported protective sweep to a full blown search of the residence.  Thus, their forced entry therein impermissibly exceeded the scope of the protective sweep.

## II.  THE SEARCH WARRANT IS NOT SUPPORTED BY PROBABLE CAUSE

The United States and Georgia Constitutions protect citizens from unreasonable searches and seizures and thus provide "that no warrant shall issue except upon probable cause particularly describing the place to be searched, and the persons or things to be seized." (Citation and punctuation omitted.) Conrad v. State, 217 Ga.App. 388, 390(2), 457 S.E.2d 592 (1995). See U.S. Const. amend. IV; Ga. Const. of 1983, Art. I, Sec. I, Par. XIII.  The Fourth Amendment prohibits a general warrant. Boyd v. United States, 116 U.S. 616, 625, 6 S.Ct. 524 (1886); Andresen v. Maryland, 427 U.S. 463, 480, 96 S.Ct. 2737 (1976).  A search warrant will only issue upon facts "sufficient

to show probable cause that a crime is being committed or has been committed." O.C.G.A. § 17-5-21(a).  The magistrate's task in determining if probable cause exists to issue a search warrant is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. State v. Stephens, 252 Ga. 181, 182, 311 S.E.2d 823 (19840; Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); Jones v. United States, 362 U.S. 257, 271, 80 S.Ct. 725 (1960). The warrant must also describe the things to be seized with sufficient particularity and be "no broader than the probable cause on which it is based." United States v. Weber, 923 F.2d 1338, 1342 (9th Cir.1991).

It is well settled that "an affidavit is presumed valid in the absence of evidence that it contained deliberate falsehoods, was made with reckless disregard for the truth, or that the affiant consciously omitted material facts that, if included, would have indicated the absence of probable cause." (Punctuation omitted.) Jarrett v. State, 299 Ga.App. 525, 533, 683 S.E.2d 116 (2009).  In Franks v. Delaware, 438 U.S. 154, 98

S.Ct. 2674, 57 L.Ed.2d 667 (1978), the Supreme Court reasoned that the requirement that a warrant not issue "but upon probable cause, supported by Oath or affirmation," would be reduced to a nullity if a police officer was able to use deliberately falsified allegations to demonstrate probable cause, and, having misled the magistrate, then was able to remain confident that the ploy was worthwhile. "[I]f a court determines that an affidavit contains material false representations or omissions, the false statements must be deleted, the omitted truthful material must be included, and the affidavit must be reexamined to determine whether probable cause exists to issue a warrant. (Punctuation omitted.) Brown v. State, 292 Ga.App. 269, 275(2), 663 S.E.2d 749 (2008). In U.S. v. Leon, the Court published a similar opinion, holding that "[i]n the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." U.S. v. Leon 468 U.S. 897, 104 S.Ct. 3405 U.S.,1984. Leon prescribes three instances in which the underlying application for the warrant may fail: dishonesty, recklessness, or lack of objectively reasonable belief of existence of probable cause.

The affidavit submitted in support of the application for search warrant reads as follows:

Affiant, Ken MacGillivary, is employed with the Clayton County Police Department, Jonesboro, Clayton County, Georgia, currently assigned to the major felony unit, of the Criminal Investigation Division, holding the rank of Detective.  Affiant is a certified peace officer, as recognized by the Peace Officers Standards and Training Council, (POST), and has so been, since March 1990. Affiant is in compliance with the statutes of Title 35 of the Official Code of Georgia, and is therefore authorized to apply for and execute search and seizure warrants as set forth in the Statutes of Title 17 of the Official Code of Georgia Annotated.

On 122211, at approximately 0034 hrs, EDNECEDIA SUTINA JOHNSON black/female, date of birth:122065, while in the residence located at; 9154 Betony Wood Trail, Jonesboro, Clayton County, Georgia, heard suspects breaking into the front of the house, at which time she ran out the back of the house, dialing 911.  Shortly thereafter JOHNSON heard gunshots from within the residence, while she was on the phone with Clayton Count Dispatch.

Upon the arrival of Clayton County Police, they observed a
black male suspect laying on the grass, close to the
street, this subject having an apparent gunshot wound to
the head.  The responding officers then began to clear the
residence, to look for both victims and any other offenders
present.  They observed a black/male subject laying on the
floor with a shotgun blast to his right hand.  His name
possibly being; MARCUS LIVELY, MARCUS GRAHAM, or DAVID
SHERIFF.

Upon further checking of the residence they observed
multiple blank financial transaction cards, blank checks, a
printing press, multiple computers, printers, scanners,
cameras and cell phones, which were determined to have been
utilized in the manufacturing of fraudulent checks and
financial transaction cards.  There were also multiple
handguns observed in the residence.

The information contained in this search warrant
application is in reference to incidents that occurred at
9154 Betony Wood Drive, Jonesboro, Clayton County, Georgia.
This location being within the unincorporated areas of
Clayton County, Georgia.

The Georgia Supreme Court has cautioned attesting officers
and magistrates to "make every effort to see that supporting

affidavits reflect the maximum indication of reliability....”
State v. Stephens, 252 Ga. 181, 184, 311 S.E.2d 823 (1984).  The
attesting officer in this case failed to make such an effort and
intentionally omitted facts and misrepresented the circumstances
under which the evidence supporting probable cause came to be
“observed” by officers.  The affiant omitted the fact that Black
was a resident in the home and a victim of the home invasion and
even went so far as to misrepresent Black as a “black/male
suspect”, officers omitted the fact that they had spoken with
Black, that they were advised that no one else was inside the
residence, that their “protective sweep” of the residence came
some 30 minutes after their initial arrival on the scene and was
not supported by any reasonable suspicion or articulabe facts to
support a finding that a protective sweep was necessary, that
the emergency had ended and there was no indication that others
were present on the scene, that they failed to obtain consent to
search from the residents who were present on the scene, and
that officers “observed” the evidence listed in the affidavit
only after they impermissibly broke open a locked door on the
bottom level of the residence.

Black and Johnson acknowledges the legal authority which
provides that search warrant affidavits are presumptively valid
and that insignificant and immaterial misrepresentations or

omissions will not invalidate a warrant. Franks v. Delaware, 438 U.S. 154, 171, 98 S.Ct. 2674, 2684 (1978); United States v. Reid, 69 F.3d 1109, 1114 (11th Cir.1995).  However, a search warrant must be voided and the fruits of the search excluded if the search warrant affidavit contained a false statement made knowingly and intentionally or with reckless disregard for the truth, and the affidavit's remaining content does not establish probable cause. Franks v. Delaware, *supra*, at 155-56, 98 S.Ct. at 2676.  Thus, a defendant must show (1) "that the alleged misrepresentations or omissions were knowingly or recklessly made" and (2) "that the result of excluding the alleged misrepresentations and including the alleged omissions would have been a lack of probable cause for issuance of the warrants." United States v. Novaton, 271 F.3d 968, 986-87 (11th Cir.2001).  Evidence that is gathered through the police's exploitation of an illegality must be suppressed as fruit of the poisonous tree. Wong Sun v. United States, 371 U.S. 471, 488, 83 S.Ct. 407, 417 (1963).  The exclusionary rule prohibits introduction into evidence of tangible material seized during an unlawful search, testimony concerning knowledge acquired during an unlawful search, and both tangible and testimonial derivative evidence that is the product of the primary evidence or that is otherwise acquired as an indirect result of the unlawful search, up to the point where the taint is dissipated by its attenuated

connection with the unlawful search.  <u>Murray v. United States</u>,
487 U.S. 533, 536-537, 108 S.Ct. 2529 (1988) (plurality
opinion).  The core rationale for extending the exclusionary
rule to "fruit of the poisonous tree" is that the "admittedly
drastic and socially costly course is needed to deter police
from violations of constitutional and statutory protections....
On this rationale, the prosecution is not to be put in a better
position than it would have been in if no illegality had
transpired."  <u>Nix v. Williams</u>, 467 U.S. 431, 442-443, 104 S.Ct.
2501 (1984).

     In the case at bar, officers included evidence that was
gathered by means an illegality, to wit: the impermissible entry
into and search of the locked room on the bottom floor of Black
and Johnson's home.  The officers completely omitted the fact
that they broke into the locked room in order to observe the
evidence which forms the basis of the probable cause in the
warrant.  Officers made material misrepresentations with regard
to the identity of Black, who was found inside the residence and
who was identified as a suspect in the affidavit but as the
victim in the police report.  Officers misrepresented in the
warrant application that the items to be seized were in
violation of Georgia Law(s) criminalizing armed robbery,
aggravated assault, aggravated battery and burglary.  The items
to be seized have no relation, whatsoever, to the listed

offenses, particularly since Black and Johnston were the victims
of the listed offenses and the perpetrators of them.  Without
the evidence obtained by the illegality of the impermissible
search, and absent the misrepresentations and omissions
discussed herein, the remaining information in the affidavit
supporting the search warrant is insufficient to support a
finding of probable cause.  Accordingly, the search warrant is
invalid and any and all evidence seized pursuant to the same
must be suppressed.


### III. NO GOOD FAITH EXCEPTION IS APPLICABLE

Georgia does not recognize the good faith exception to its
statutory exclusionary rule because our legislature has not
provided one.  Gary v. State, 262 Ga. 573, 422 S.E.2d 426 (1992);
State v. Gallup, 236 Ga.App. 321, 325, 512 S.E.2d 66 (1999);
O.C.G.A. § 17-5-30.

Even if this state had adopted an exclusionary rule such as
that enunciated in United States v. Leon, 468 U.S. 897, 104
S.Ct. 3405 (1984), said exclusionary rule would not apply in the
instant case.  The exclusionary rule operates to prevent the
government from using evidence seized as the result of an
illegal search in a subsequent criminal prosecution. United

States v. Martin, 297 F.3d 1308, 1312 (11th Cir.2002). The
Supreme Court, however, in United States v. Leon, 468 U.S. 897,
104 S.Ct. 3405 (1984) articulated a good faith exception to the
exclusionary rule. The Court held that "the Fourth Amendment
exclusionary rule should be modified so as not to bar the use in
the prosecution's case in chief of evidence obtained by officers
acting in reasonable reliance on a search warrant issued by a
detached and neutral magistrate but ultimately found to be
unsupported by probable cause." Id. 468 U.S. at 900, 104 S.Ct.
at 3409.  The purpose of the exclusionary rule is to deter
unlawful police misconduct; thus, when officers engage in an
"objectively reasonable law enforcement activity" and act in
good faith and in reliance on a search warrant from a judge, the
Leon good faith exception applies. Leon, 468 U.S. at 919-20, 104
S.Ct. 3405.

In this case, it was not an "objectively reasonable law
enforcement activity" but rather the officers' unlawful entry
into the locked room on the bottom floor that led to the
officers' request for a search warrant.  Indeed, the evidence
"observed in plain view" by the officers was the only evidence
supporting probable cause to issue the search warrant and such
evidence was not in plain view prior to the officers' illegal
entry into the locked room.  In such a situation, "the search

warrant affidavit was tainted with evidence obtained as a result of a prior, warrantless, presumptively unlawful entry into a [place where Black and Johnson had a reasonable expectation of privacy]." United States v. Meixner, 128 F.Supp.2d 1070, 1078 (E.D.Mich.2001); see also United States v. Wanless, 882 F.2d 1459, 1466 (9th Cir.1989) (noting that the "good faith exception does not apply where a search warrant is issued on the basis of evidence obtained as the result of an illegal search"); United States v. Reilly, 76 F.3d 1271, 1280 (2nd Cir.1996) (declining to apply the good faith exception when the "issuance of the warrant was itself premised on material obtained in a prior search that was illegal").  Because the officers were not permitted to enter the locked room under the totality of the circumstances, without a warrant and without valid consent, this court must find that the exclusionary rule is applicable.  The evidence obtained as a result of the police officers unlawful entry into the locked room must be suppressed.

IV.  **THE INDEPENDENT SOURCE DOCTRINE IS INAPPLICABLE TO THE INSTANT CASE**

   When examining the admissibility of evidence that is "fruit of the poisonous tree," the appropriate question is whether the evidence at issue "has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to

23

be purged of the primary taint.'" Wong Sun v. United States, 371
U.S. 471, 488, 83 S.Ct. 407 (1963).  Using this rationale, two
functionally similar exceptions to the exclusionary rule—the
independent source doctrine and the ultimate or inevitable
discovery doctrine—have developed because "the interest of
society in deterring unlawful police conduct and the public
interest in having juries receive all probative evidence of a
crime are properly balanced by putting the police in the same,
not a worse, position than they would have been in if no police
error or misconduct had occurred." Nix v. Williams, 467 U.S.
431, 443, 104 S.Ct. 2501 (1984).   The independent source
doctrine allows admission of evidence that was discovered by
means wholly independent of any constitutional violation, while
the ultimate or inevitable discovery doctrine allows admission
of evidence that was discovered as a result of police error or
misconduct if the State establishes by a preponderance of the
evidence that the information ultimately or inevitably would
have been discovered by lawful means, without reference to the
police error or misconduct. Id. at 443-444, 104 S.Ct. 2501.
"[I]nevitable discovery involves no speculative elements but
focuses on demonstrated historical facts capable of ready
verification or impeachment...." Id. at 445, n. 5, 104 S.Ct.
2501.  Thus, under both exceptions to the exclusionary rule,
exclusion of the evidence puts the police in a worse position

than they would have been absent any error or misconduct because the evidence was or would have been obtained without police error or misconduct. Id. at 443-444, 104 S.Ct. 2501.

The independent source doctrine " 'allows the prosecution to use evidence only if it was, in fact, obtained by fully lawful means....'" Teal v. State, 282 Ga. 319, 324, 647 S.E.2d 15 (2007).  This doctrine typically operates when evidence discovered as the result of an initial unlawful search is later discovered in a second search conducted by lawful means using information gained independently of the initial search. Reaves v. State, 284 Ga. 181, 664 S.E.2d 211 (2008) (initial warrantless search did not render evidence inadmissible because the same evidence was discovered after the search warrant issued based on evidence gained independently of the initial search); Murray v. United States, 487 U.S. 533, 538-539(II), 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988) (" '(i)n the classic independent source situation, information which is received through an illegal source is considered to be cleanly obtained when it arrives through an independent source' ").  The independent source doctrine is clearly inapplicable here there is no source, independent of the impermissible entry into the locked room, which would have led officers to discover the evidence otherwise.

## V. THE INEVITABLE DISCOVERY DOCTRINE IS INAPPLICABLE TO THE INSTANT CASE

The purpose of the inevitable discovery rule is "to block setting aside convictions that would have been obtained without police misconduct" and is closely related to the harmless-constitutional error rule of Chapman v. California, 386 U.S. 18, 22, 87 S.Ct. 824 (1967). Nix v. Williams, *supra*, 467 U.S. at 444, n. 4, 104 S.Ct. 2501.

While the properly applied "independent source" exception allows the prosecution to use evidence only if it was, in fact, obtained by fully lawful means.... The "inevitable discovery" exception ... differs in one key respect ...: specifically, the evidence sought to be introduced at trial has not actually been obtained from an independent source, but rather would have been discovered as a matter of course if independent investigations were allowed to proceed. Id.  In this case, it cannot be said that the evidence would have inevitably been discovered as a matter of course if independent investigations were allowed to proceed.  The only reason why officers were inside the residence was to investigate the offenses which were committed against Black and Johnson.  Officers had no other means for investigating either resident or the property.  A full blown search of the entire residence is not permitted simply because

the residence was the scene of a crime, even if that crime was murder.   Accordingly, the State cannot show that the inevitable discovery doctrine would apply here.

## CONCLUSION

For the reasons set forth herein, the motion to suppress must be granted.

This 30th day of March, 2012.

Respectfully Submitted,

/s/ Tony L. Axam

Tony L. Axam
Georgia Bar No.: 029725
Attorney for Defendant Black

AXAMLAW LLC
P. O. Box 115238
Atlanta, Georgia 30310
(404) 524-2233
(404) 751-2775 facsimile
**tony.axam@axamlaw.com**

/s/ Ashutosh Joshi

Ashutosh Joshi
Georgia Bar No.: 405375
Attorney for Defendant Johnson

The Joshi Law Firm
66 Lenox Pointe
Atlanta, GA 30324
(404)968-2600 Direct
(404)968-2614 facsimile
joshilawfirm@msn.com

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served the opposing party a true and correct copy of the within and forgoing **MOTION TO SUPPRESS** via U.S. Mail with adequate postage thereon to:


**Nicholas Oldham**
U.S. District Attorneys Office
600 Richard Russell Building
75 Spring Street, S.W.
Atlanta, GA 30303


This 30th day of March, 2012.


Respectfully Submitted,

AXAMLAW LLC,


/s/ Tony L. Axam

Tony L. Axam
Georgia Bar No.: 029725
Attorney for Defendant

P. O. Box 115238
Atlanta, Georgia 30310
(404) 524-2233
(404) 751-2775 facsimile
tony.axam@axamlaw.com